IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JEFFERY SEELBACH, §
 §
　　　　　Plaintiff, §
 §
VS. § Civil Action No. 3:17-CV-3386-D
 §
DITECH FINANCIAL LLC, §
 §
　　　　　Defendant. §

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff Jeffery Seelbach ("Seelbach") asserting claims for breach of contract and violations of the Texas Debt Collection Act ("TDCA"), Tex. Fin. Code Ann. § 392.001 *et seq.* (West 2016), and the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-17.63 (West 2018), defendant Ditech Financial LLC ("Ditech") moves to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. Concluding that Seelbach's TDCA and DTPA claims are preempted by the federal Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA"), the court grants the motion as to these claims. Concluding that Seelbach has pleaded a plausible breach of contract claim, the court denies the motion as to that claim. The court grants Seelbach leave to file a second amended complaint.

I

The following facts are taken from Seelbach's first amended complaint ("amended complaint"), which the court accepts as true for the purposes of deciding Ditech's motion

to dismiss.[1]

This case arises from a prior dispute between Seelbach and Ditech. In 2012 Ditech sued Seelbach in Texas state court to collect an allegedly unpaid balance on a promissory note. Seelbach counterclaimed, asserting claims for breach of contract, defamation, intentional infliction of emotional distress, and wrongful foreclosure. The parties settled the case two years later. In their written settlement agreement, Seelbach agreed to pay a certain sum to Ditech. In exchange, Ditech agreed to release Seelbach from the outstanding debt. The settlement agreement provided "a 'full and complete compromise and settlement of all claims,' disposed of all disputes between the parties, and released the parties of all liability to each other." Am. Compl. 2. Seelbach paid the amount specified in the settlement agreement, and the state court accordingly dismissed the case with prejudice.

After the prior dispute concluded, Ditech provided false information to credit bureaus stating that Seelbach's outstanding indebtedness to Ditech remained unpaid and that "the loan had been charged off as bad debt." *Id.* at 3. These disclosures occurred in both May and November of 2015. As a result of Ditech's actions and their effects on Seelbach's credit reports, he was unable to find employment for a four-month period.

---

[1] In deciding Ditech's Rule 12(b)(6) motion, the court construes Seelbach's amended complaint in the light most favorable to him, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in Seelbach's favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

Seelbach then filed the instant suit against Ditech in state court. In his state-court original petition, he asserted claims for harassment and intentional infliction of emotional distress. After Ditech removed the case to this court, Seelbach filed an amended complaint alleging claims for breach of contract and violations of the TDCA and the DTPA. Ditech now moves under Rule 12(b)(6) to dismiss all of Seelbach's claims. Seelbach opposes the motion.

II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin F. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive a motion to dismiss, Davidson must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

III

The court first considers Seelbach's breach of contract claim.

A

Ditech maintains that Seelbach's breach of contract claim fails as a matter of law. It contends that the amended complaint does not mention settlement terms that relate to any purported credit reporting obligations for Ditech; that Seelbach does not allege that the settlement agreement contains any provision related to credit reporting; and that, under Texas law, breach of contract claims fail when the plaintiff does not point to the specific contractual provision that was allegedly breached. Seelbach responds that the amended complaint adequately pleads a breach of contract claim. He maintains that the amended complaint does not cite specific provisions of the settlement agreement due to its confidentiality, and that the amended complaint pleads each required element of a breach of contract claim as is.

B

"Under Texas law, the elements of a breach of contract claim are: 1) the existence of a valid contract; 2) performance or tendered performance by the plaintiff; 3) breach of the contract by the defendant; and 4) damages to the plaintiff resulting from the breach." *Lee v. Tyco Elecs. Power Sys., Inc.*, 393 F.Supp.2d 429, 434 (N.D. Tex. 2005) (Fitzwater, J.) (quoting *Lewis v. Bank of Am. NA*, 343 F.3d 540, 545 (5th Cir. 2003)) (internal quotation marks omitted). "To prevail in a breach of contract claim, a plaintiff must show that the defendant failed to perform an act that it expressly or impliedly promised to perform." *Berry v. Fed. Nat. Mortg. Ass'n*, 2013 WL 1294008, at *4 (N.D. Tex. Mar. 29, 2013) (Lindsay, J.) (citing *Case Corp. v. Hi Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 769-70 (Tex. App. 2005, pet. denied)).

C

The court concludes that Seelbach has adequately pleaded all the required elements of a breach of contract claim. Regarding the settlement agreement, the amended complaint alleges that

> [o]n or about September 23, 2014, the parties entered into a written settlement agreement under which Seelbach was to pay an agreed upon sum to Defendant. Upon payment of that amount, the settlement agreement provided a "full and complete compromise and settlement of all claims," disposed of all disputes between the parties, and released the parties of all liability to each other.

Am. Compl. 2. Seelbach asserts that the settlement agreement was "a contract whereby

Defendant agreed to release Plaintiff from further obligation under the promissory note and to accept the settlement payment as full and final payment of all amounts due defendant." *Id.* at 3. The amended complaint pleads that Seelbach "fully performed under the terms of the settlement agreement" by paying the agreed amount and dismissing his countersuit against Ditech. *Id.* He further alleges that, after he made this payment, Ditech breached the settlement agreement by providing "false information to the credit bureaus stating that Seelbach's balance of $41,301.00 . . . remained unpaid and that the loan had been charged off as bad debt." *Id.* The amended complaint concludes by asserting that "Seelbach was unable to secure employment for an approximate four-month period" as a result of Ditech's actions. *Id.* These factual allegations, accepted as true and viewed in the light most favorable to Seelbach, enable the court to reasonably infer (1) the existence of a valid contract; (2) performance or tendered performance by Seelbach; (3) breach of the contract by Ditech; and (4) damages to Seelbach resulting from the breach.

Ditech maintains that Seelbach fails "to identify any provision in the settlement agreement that purportedly creates any alleged credit reporting obligations that arose upon fulfillment of Plaintiff's obligations," and that he fails to state that Ditech breached any contract. D. Reply Br. 3. The court disagrees. Seelbach alleges that Ditech agreed to "accept the settlement payment *as full and final payment* of all amounts due defendant." Am. Compl. 2 (emphasis added). Reporting the unpaid portion as a charge-off to credit reporting companies, however, would not satisfy this contractual obligation. A charge-off

is "a declaration by a creditor that an amount is unlikely to be collected." *Frost v. Resurgent Capital Servs., L.P.*, 2016 WL 3479087, at *1 n.1 (N.D. Cal. June 27, 2016); *see also* Black's Law Dictionary 266 (9th ed. 2009) (defining "charge off" as "[t]o treat (an account receivable) as a loss or expense because payment is unlikely; to treat as bad debt"). While the charge is considered uncollectible by the original lender, the debt is still legally valid and remains so after the charge-off. *Frost*, 2016 WL 3479087, at *1 n.1; *see also What Does "Charge off" Mean on a Credit Report*, Experian, https://www.experian.com/blogs/ask-experian/what-does-charge-off-mean/ (last visited July 19, 2018) (explaining that "[w]hen an account displays a status of 'charge off,' it means the account is closed to future use, although the debt is still owed. The credit grantor may continue to report the past due amount and the balance owed."). Therefore, Seelbach has plausibly pleaded that, when Ditech labeled his prior debt as having been charged off, it treated the debt as having an outstanding balance, i.e., that, it did not, as it had contractually promised, "accept the settlement payment *as full and final payment* of all amounts due defendant." Am. Compl. 2 (emphasis added). Seelbach has alleged facts that enable the court to draw the reasonable inference that Ditech failed to perform an act that it promised to perform. The court therefore holds that Seelbach has plausibly pleaded a breach of contract claim, and it denies Ditech's motion to dismiss in this respect.

IV

The court next considers whether Seelbach's TDCA and DTPA claims are preempted by the FCRA.[2] Ditech maintains that the FCRA preempts all causes of action related to inaccurate credit reporting grounded in state statutory law. Seelbach responds that his TDCA and DTPA claims do not fall under the subject matter preempted by the FCRA.

A

"Under the doctrine of federal preemption, a federal law supersedes or supplants an inconsistent state law or regulation." *United States v. Zadeh*, 820 F.3d 746, 751 (5th Cir. 2016). The Supreme Court has identified three types of preemption: express, field, and conflict. *Id.* When a federal law contains an express preemption clause, the court "'focus[es] on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent.'" *Greenwich Ins. Co. v. Miss. Windstorm Underwriting Ass'n*, 808 F.3d 652, 655 (5th Cir. 2015) (quoting *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 594 (2011)).

The FCRA contains several explicit preemption clauses. Relevant to this case, 15 U.S.C. § 1681t(b)(1)(F) preempts state law claims by providing that "[n]o requirement or prohibition may be imposed under the law of any State—(1) with respect to any subject matter regulated under . . . (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies[.]" Section 1681s-2

---

[2]Because the court holds that the FCRA preempts these claims, it does not address Ditech's other arguments for dismissing them.

prohibits reporting "any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." *Id.* § 1681s-2(a)(1)(A). In this way, a state statutory law claim "based on a defendant's conduct in furnishing inaccurate information to a consumer reporting agency is preempted by the FCRA." *Davis v. Wells Fargo Bank, N.A.*, 976 F.Supp.2d 870, 883 (S.D. Tex. 2013) (citing *Ayers v. Aurora Loan Servs., LLC*, 787 F.Supp.2d 451, 457 (E.D. Tex. 2011)), *on reconsideration*, 2014 WL 585403 (S.D. Tex. Feb. 14, 2014)).[3]

B

Applying the text of § 1681t(b)(1)(F), the court holds that Seelbach's TDCA and DTPA claims are preempted. Seelbach's TDCA claims appear to be made under Tex. Fin. Code Ann. § 392.304(a)(8) & § 392.301(a)(3).[4] Section 392.304(a)(8) states that "a debt collector may not use a fraudulent, deceptive, or misleading representation that employs . . . misrepresenting the character, extent, or amount of a consumer debt[.]" Tex. Fin. Code Ann.

---

[3]Although there are several competing interpretations of how § 1681t(b)(1)(F) is applied in relation to the FCRA's other preemption provisions, judges of this court have uniformly followed the "statutory" approach by interpreting § 1681t(b)(1)(F) "narrowly to preempt only those claims arising under state statutory law[.]" *Shaunfield v. Experian Info. Solutions, Inc.*, 991 F.Supp.2d 786, 801 (N.D. Tex. 2014) (Lynn, J.) (quoting *Meisel v. USA Shade & Fabric Structures Inc.*, 795 F.Supp.2d 481, 490-91 (N.D. Tex. 2011) (Fish, J.); *Carlson v. Trans Union, LLC*, 259 F.Supp.2d 517, 521 (N.D. Tex. 2003) (Sanders, J.)). The court deems this approach persuasive, and—because neither party requests that the standard be reexamined—follows it in this case.

[4]In the amended complaint, Seelbach does not cite the specific TDCA provisions on which he relies. The amended complaint, however, tracks the statutory language of both Tex. Fin. Code Ann. § 392.304(a)(8) and § 392.301(a)(3). Moreover, Seelbach has not objected to Ditech's assertion that these are the statutes being referenced.

§ 392.304(a). Section 392.301(a)(3) prohibits debt collectors from making representations "to any person other than the consumer that a consumer is willfully refusing to pay a nondisputed consumer debt when the debt is in dispute and the consumer has notified in writing the debt collector of the dispute." *Id.* § 392.301(a). Seelbach alleges that Ditech violated both provisions by inaccurately reporting to credit bureaus that a debt that was otherwise settled was an unpaid charge-off. Both of these claims, therefore, would impose liability under a state statute that "relates to the responsibility of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F).

The FCRA preempts Seelbach's DTPA claim for the same reason. Seelbach again bases this claim only on Ditech's alleged reporting of the settled debt as a charge-off, and explicitly pleads that "Defendant's violations of the [TDCA] also constitute false, misleading, or deceptive acts or practices under the [DTPA]." Am. Compl. 4. Seelbach's DTPA claim is therefore a state statutory claim regarding proper reporting to credit agencies, and is preempted by § 1681t(b)(1)(F). *See Garza v. Sallie Mae, Inc.*, 2010 WL 3784197, at *5 (W.D. Tex. Sept. 21, 2010) (dismissing DTPA claim as preempted by the FCRA because "[p]laintiff's DTPA claim imposes requirements and prohibitions that relate to the subject matter of § 1681s-2, and is preempted by the express language of § 1681t(b)(1)(F)").

Seelbach's attempts to frame his case as covering subject matter outside of § 1681s-2 are unavailing. First, he maintains that these claims are not preempted by the FCRA because they are not specifically based on inaccurate credit reporting. Instead, he contends, the

"claims involve the breach of an underlying settlement agreement—a breach which happened to manifest, in part, as falsely reporting a debt to the credit bureaus that did not actually exist." P. Resp. 4. This is a distinction without a difference. That falsely reporting a debt to credit bureaus also violates the settlement agreement allows Seelbach to assert his breach of contract claim. It does not, however, change the fact that Seelbach's TDCA or DTPA claims all relate to credit reporting responsibilities. Therefore, they still fall squarely within § 1681t(b)(1)(F)'s preemption provision.

Seelbach also maintains that his TDCA cause of action consists of "a claim that Defendant misrepresented to another person that Plaintiff was willfully refusing to pay a nondisputed debt—a claim that is wholly separate from any of the subject matter involved in the [FCRA]." *Id.* Again, the court disagrees. The "another person" to which Ditech allegedly misrepresented the status of debt is a credit bureau. Seelbach's TDCA claim remains a state statutory law claim "based on a defendant's conduct in furnishing inaccurate information to a consumer reporting agency," *Davis*, 976 F.Supp.2d at 883, and, accordingly, is preempted by the FCRA.

For these reasons, the court holds the Seelbach's amended complaint fails to state a claim for violations of the TDCA and the DTPA.[5]

---

[5]The dismissal of the TDCA and DTPA claims precludes injunctive relief for Seelbach. "Under Texas law, a request for injunctive relief is not itself a cause of action but depends on an underlying cause of action." *Cook v. Wells Fargo Bank, N.A.*, 2010 WL 2772445, at *4 (N.D. Tex. July 12, 2010) (Fitzwater, C.J.) (citing *Brown v. Ke-Ping Xie*, 260 S.W.3d 118, 122 (Tex. App. 2008, no pet.)). The amended complaint grounds its request for injunctive relief in the TDCA and DTPA claims. Because today's memorandum opinion and

V

Although the court is dismissing Seelbach's TDCA and DTPA claims against Ditech, it concludes that he should be given an opportunity to replead under the federal pleading standards. *See, e.g., Hoffman v. L & M Arts*, 774 F.Supp.2d 826, 849 (N.D. Tex. 2011) (Fitzwater, C.J.) (granting similar relief in removed case). Accordingly, the court grants him 28 days from the date this memorandum opinion and order is filed to file a second amended complaint. If he fails to replead, his TDCA and DTPA claims will be dismissed under Rule 12(b)(6) based on this memorandum opinion and order. If he repleads and Ditech believes it has grounds to move to dismiss the second amended complaint, it may move for such relief.

\* \* \*

For the reasons explained, the court grants Ditech's Rule 12(b)(6) motion as to Seelbach's TDCA and DTPA claims, and denies the motion as to his breach of contract claim. The court grants Seelbach 28 days from the date this memorandum opinion and order is filed to file a second amended complaint.

**SO ORDERED**.

July 19, 2018.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

order dismisses these claims, injunctive relief is no longer available.